UNIVERSAL CARLOADING & DISTRIBUTION Co., INC., Respondent, v PENN CENTRAL TRANSPORTATION COMPANY et al., Defendants, and SOUTHERN PACIFIC TRANSPORTATION Co. et al., Appellants.

First Department, April 17, 1984

### APPEARANCES OF COUNSEL

*John M. Speyer* of counsel (*Greenhill, Speyer & Thurm,* attorneys), for respondent.

*Robert P. Shaughnessy* of counsel (*Bleakley, Platt, Remsen, Millham & Curran,* attorneys), for appellants.

### OPINION OF THE COURT

FEIN, J.

Plaintiff, a freight forwarder, sued for alleged loss and damage to shipments received from customers and turned over to defendants for interstate rail transportation. Plaintiff initially filed claims with defendant Penn Central

Transportation Company, a carrier which had been involved in each of the several shipments in question as either the initial or delivering (final) carrier. Each of the three appealing defendants was either the delivering or initial carrier on some of those shipments in conjunction with Penn Central.

Plaintiff asserts it has already paid off its customers on all these claims, although there is no documentary evidence of this in the record. By the time the claims were submitted to Penn Central, that company was undergoing reorganization, thus preventing early resolution. This action was commenced in 1973, under former section 20 (11) of title 49 of the United States Code (the Carmack Amendment).*

Plaintiff pursued Penn Central into bankruptcy. In 1981, Penn Central's reorganization trustees submitted an incomplete settlement proposal in response to plaintiff's proof of claim; offers were made on some items and denied on others. Plaintiff then moved for partial summary judgment with regard to those claims on which Penn Central's reorganization trustees had admitted liability in their settlement proposal. The motion sought summary judgment not against Penn Central, but against three presumably solvent defendants, appellants herein, under the Carmack Amendment. That statute provides that any railroad receiving property for interstate shipment is liable to the holder of the receipts therefor for any loss caused by it or any carrier to which the property was delivered. The purpose of the statute is to establish liability on the initial and delivering carriers, and to place the burden on those carriers to recover their losses from the connecting carriers on whose lines the damage might have occurred (see *Atlantic Coast Line v Riverside Mills,* 219 US 186; *Season-All Inds. v Merchant Shippers,* 451 F Supp 727). Judgment was sought against the appellants solely on the basis of the Penn Central trustees' admission of liability on certain of the claims. Special Term erred in holding the appellants liable on this basis, "under familiar agency principles".

In the first place, an offer of settlement cannot be considered an admission of liability (*Firedoor Corp. v Reliance*

---

* Now US Code, tit 49, § 11707.

*Elec. Co.,* 56 AD2d 523, 524). Such an offer of compromise, made for the purpose of procuring a settlement of a pending controversy, is not an admission of fact (*Smith v Satterlee,* 130 NY 677). Even if plaintiff could establish that it has paid the claims to the extent that the Penn Central trustees have admitted liability, this would not be competent to prove anything more than an offer of compromise for the purpose of procuring a settlement. The incomplete nature of the offer further militates against the positing of these figures as evidence.

In any event, the Penn Central trustees' offer to settle could not bind the appealing defendants. There are no "familiar principles of agency" which would bind these defendants to the Penn Central trustees' admission of liability. The Federal statute may make all carriers jointly and severally liable, but liability still must be proven. There is no basis for finding liability on the part of some carriers simply because of an implied admission of liability in an offer of settlement by another carrier. Plaintiff's reliance on the Association of American Railroads Freight Claim Rules is misplaced. Even assuming the application of such rules here, where there is no proof plaintiff has paid the claims, rules for the apportionment of claims among carriers provide no basis for summary judgment as to liability. Moreover, rule 145 expressly provides that settlement cannot bind nonconcurring carriers, where such carriers have "served notice they prefer to defend the suit". The carriers here involved have been defending this suit from the outset by their own counsel. Settlement or an offer of settlement by the trustees of Penn Central would necessarily be for their own account.

A settlement of a controversy necessarily involves some investigation by the parties thereto. Thus, no carrier can be bound by a settlement based solely on an investigation and admission of liability by a corresponding carrier. Neither plaintiff's incompletely documented settlement with its customers nor the compromise offer of settlement by the Penn Central reorganization trustees can summarily deprive the appellants of the right to litigate their liability on these claims. (*World Wide Meats v Chicago & North Western Transp. Co.,* 383 F Supp 807.)

Order, Supreme Court, New York County (Edward J. Greenfield, J., upon decision of Manuel A. Gomez, J.), entered February 8, 1983, granting plaintiff's motion for partial summary judgment, and interlocutory judgment of said court, entered April 18, 1983, awarding plaintiff $58,013 plus $46,222 interest against defendant Burlington Northern, Inc., $18,485 plus $15,100 interest against defendant Missouri Pacific Railroad, and $1,295 plus $1,036 interest against defendant Southern Pacific Railway Systems (designated in the caption as Southern Pacific Transportation Co.), should be reversed on the law and plaintiff's motion for summary judgment should be denied, with costs.

SANDLER, J. P., ASCH, SILVERMAN and ALEXANDER, JJ., concur.

Order, Supreme Court, New York County, entered on February 8, 1983 and interlocutory judgment of said court, entered thereon on April 18, 1983, unanimously reversed, on the law, the judgment vacated, and plaintiff's motion for summary judgment denied. Defendants/defendants-appellants shall recover of respondent one bill of $75 costs and disbursements of these appeals.